1  David H. Cluff, Esq. #005644
   Thomas A. Grisoni, #025511
2  Wattel & York, LLC
   2175 N. Alma School Road, Suite B107
3  Chandler, AZ 85224
   Tel: 480-222-2020
4  Fax: 480-899-2741
   Email: david@dhclufflaw.com
5  Email: t.grisoni@wattelandyork.com
   *Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| SAMUEL MATOS and LAURA MATOS, husband and wife, | No. CV-11-2175-PHX-FJM |
|---|---|
| Plaintiffs, | |
| vs. | **DECLARATION OF MARK R. CANNON, P.E., IN SUPPORT OF PLAINTIFFS OPPOSITION TO DEFENDANT TCOM, LP'S MOTION FOR SUMMARY JUDGMENT** |
| TCOM, LP; DOES I-XX; AND BLACK & WHITE CORPORATIONS I-X, | |
| Defendant. | |

I, Mark R. Cannon, P.E., declare as follows:

1. I am registered professional engineer.

2. I prepared the Expert Disclosure dated May 29, 2012, pages 1-5 attached hereto.

3. Said Expert Disclosure contains opinions which I have formed in this matter.

4. My opinions in this matter are consistent with my May 29, 2012 Expert Disclosure and with my deposition in this matter taken on September 12, 2012.

5. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed by me on this 14 day of December 2012

*(signature)*
Mark R. Cannon, P.E.

Samuel Matos v TCOM  
CV-11-2175-PHX-FJM

May 29, 2012  
AKE File # 11-557X

Expert Disclosure of Mark R. Cannon

Mark R. Cannon is a registered professional engineer with expertise in the development, design, creation of warnings and instructions, training of personnel and deployment of military systems. This document serves to disclose Mr. Cannon as an expert in this matter. As litigation evolves, Mr. Cannon anticipates the opportunity to review material that customarily includes but is not limited to the following:

- Physical inspection of subject unit or an exemplar
- Plaintiff(s) Initial Disclosure Statement
- Defendant(s) Initial Disclosure Statement
- Plaintiff(s) Answers to Interrogatories
- Defendant(s) Answers to Interrogatories
- Plaintiff(s) Response to Request for Production of Documents
- Defendant(s) Response to Request for Production of Documents
- Accident Reports
- Medical Reports (if applicable)
- Relevant Photographs and Video
- Manual/Operator Instructions, Literature on Subject Product
- Deposition of Plaintiff(s)
- Deposition of Defendant(s)
- Depositions of all other involved parties (i.e., Police Officers, Witnesses, First Responders, etc.)
- Evidence (subject and/or exemplar)
- Service or Maintenance Records

As of this writing, Mr. Cannon has been provided information from those items listed below:

1. Miscellaneous videos made by plaintiff
2. Miscellaneous photographs made by plaintiff
3. 4D05100 Rev 01 22M Mooring System Structural, drawing
4. 4D05001 Rev 01 22M Platform, drawing
5. Video entitled video of incident 10 09 45 time mark.avi
6. TCOM, LP, 22M Aerostat System, Preliminary Operations Manual, 22M-P-01, Revision B, July 2010 (Draft)
7. Defendant TCOM, :P's Responses and Objections to Plaintiffs' Interrogatories and Requests for Production, dated 03/22/12
8. Purchase Order, from Navmar Applied Sciences to Tcom, LP dated 08/30/10 with Invoicing Instructions, Payment and Clauses, Acceptance Certificate, Subcontract Clauses
9. Purchase Order from Navmar Applied Sciences to Tcom, LP, dated 01/25/10
10. Request for Shipment, dated 05/19/10
11. Request for Shipment, dated 07/15/10
12. Emails re: Yuma Incident, dated 10/25/10 & 10/26/10
13. Service Bulletin, TCOM 22M Mooring Platform Gantry, dated 10/25/10
14. Emails re Service Bulletin Sign off, dated 10/26/10
15. Request for Shipment, dated 10/27/10

Samuel Matos v TCOM  
CV-11-2175-PHX-FJM

May 29, 2012  
AKE File # 11-557X

16. Emails re: Service Bulletin Sign off, dated 10/27/10
17. Email re: Yuma Incident 25 October 2010, dated 10/28/10
18. Service Bulletin, TCOM 22M Mooring Platform Retractable Boom, dated 10/27/10

Additional Discovery material will be provided as litigation progresses. Thus, the anticipated opinions contained herein are based on the information currently available. Mr. Cannon reserves the right to revise and/or supplement his opinions as additional information is received, or becomes available and is reviewed.

1) Mr. Cannon's opinions include the following:

- The incident in which Mr. Matos was injured was during the deployment of a model 22M mooring platform retractable boom that is part of an aerostat mooring system provided to the military by TCOM.

- The deployment of the retractable boom required the exertion of several personnel by manually pulling and pushing on it.

- The required exertion of the personnel was due to the weight of the retractable boom and friction between sliding members of the retractable boom and the base unit.

- During the exertion of the personnel in deploying the retractable boom, it was pulled past the limit of its intended deployment position and collapsed with Mr. Matos beneath it.

- The retractable boom was pulled past its deployment position because it lacked mechanical stops that would limit its travel.

- There are a number of deficiencies associated with this system: the level of physical exertion of personnel in deploying the retractable boom and subsequent lack of control during retractable boom extension, the absence of a guard to prevent overextension of the retractable boom, the absence of a guard to prevent collapse of the retractable boom, and the absence of a guard to prevent personnel from being under the retractable boom when collapse occurs.

- With respect to the above cited deficiencies, the U.S. military has specific design standards which are to be followed by contractors in developing, designing, testing and fielding systems in order to protect personnel from hazards. Those standards include the limits of physical exertion required by personnel while performing tasks, conceptual design hazard analyses, preliminary design hazard analyses, system design hazard analyses, and other techniques which identify potential dangers and hazards then mitigate them in order to protect personnel. These hazard analyses and their associated mitigation techniques are also mirrored in civilian design standards. By properly following these methods, the identification of hazards prior to deploying systems into the field, leads to modifications to the systems to make them safer.

- Mr. Matos' incident and the information supplied to date indicate that these hazard mitigation techniques required to protect personnel were violated. These techniques are well known, published, and provide the basis for a standard of care, best practice and define the state of the art of methods intended to protect personnel from injury. Further, these methods are defined in regulations and standards promulgated by the military. It

Samuel Matos v TCOM  
CV-11-2175-PHX-FJM

May 29, 2012  
AKE File # 11-557X

is expected that contractors will follow them. Mr. Matos' incident indicates that the contractor, TCOM, did not exercise due diligence and failed to follow proper safety standards prior to deploying this system.

- TCOM's failure to exercise due diligence rendered the subject Aerostat system defective and unreasonably dangerous to persons who could be expected to attempt deployment of the system's retractable boom, like Mr. Matos, because:

    o The retractable boom could be pulled past its intended position during attempted deployment and collapse.

    o The retractable boom was sufficiently heavy such that if it collapsed during attempted deployment it could seriously or fatally injure personnel involved.

    o Deployment of the retractable boom required a significant amount of physical force and exertion by personnel in order to pull or slide the boom into its intended deployment position.

    o The need for significant exertion in pushing and pulling the boom into position increased the risk that it could be pulled past a safe position during attempted deployment.

    o The system was not equipped with any kind of guard or mechanical stop to prevent the boom from being pushed and pulled past its deployment position such that it could collapse.

    o Although quaternary in the hierarchy of hazard mitigation techniques, the instructions for deploying the system were confusing, inaccurate and misleading and failed to give clear information to personnel as to how to safely deploy the retractable boom.

    o Mr. Matos and other personnel would not be expected to recognize the danger associated with the fact that during deployment of the boom, it could be pushed and pulled beyond a safe position such that it would collapse and seriously or fatally injure those involved.

    o The instructions for deploying the boom were not only confusing, misleading and inaccurate but they further failed to adequately warn the plaintiff or others of the danger and risk of serious injury or death that could occur during deployment of the retractable boom if it were pushed or pulled beyond a certain position.

- Further, the information supplied to date indicates that there were available alternative designs and existing modifications to the retractable boom that would have prevented Mr. Matos' incident.

The basis and reasons for Mr. Cannon's opinions are established on but not limited to the following:

- His background specifically includes experience in the development, design, creation of warnings and instructions, training of personnel and deployment of military systems. An example of which is a satellite data acquisition system consisting of tracking antennas,

Samuel Matos v TCOM  
CV-11-2175-PHX-FJM

May 29, 2012  
AKE File # 11-557X

radomes and electrical power control units that has been deployed at several military installations in the United States and around the world.

- His development, design, fabrication and fielding of a civilian version of a meteorological rocket launch system based on a military design and deployed in Mexico and on the Florida gulf coast. Hazard analyses included transport, loading, arming and launching of solid fuel rockets.

- His evaluation of hazards related to cabin safety and restraint systems in trucks used by the U.S. military, and creating a design guide and recommendations to protect personnel during missions.

- His design and fabrication of a sling kit system used to lift and recover downed military rotorcraft by other rotorcraft. Hazard analyses included electrostatic discharge from rotor downwash, in-flight aerodynamic instability, and frequency coupling caused by rotor bounce.

2) As discovery continues, the facts or data relied upon by Mr. Cannon to form his opinions may also include but not be limited to the following:

- Inspections of the TCOM 22M aerostat system including the retractable boom that will occur during the course of this litigation.

- Experimental testing as it applies to physical exertion, mechanical design issues, and to support calculations as required.

- Calculations as applicable and related to the situation in which Mr. Matos was injured, in order to define forces, motions or physical principles.

- Modeling – whether computer-generated or performed by demonstrations in order to explain, describe or define forces, motions or physical characteristics related to the retractable boom and human interaction.

- Literature – standards, treatises, textbooks – civilian and government – that address but are not limited to issues related to design standards, design methodology, hazard analyses, warnings and instructions and training.

- Internal documents produced in discovery by defendants as they relate to the issues of interest.

3) Exhibits used to summarize or support Mr. Cannon's opinions may include but not be limited to the following:

- All of the above referenced documents and materials set forth above and which have been reviewed by me and disclosed herein.

- The medical records of the plaintiff.

- Demonstrative models – both physical and computer-generated.

Samuel Matos v TCOM  
CV-11-2175-PHX-FJM

May 29, 2012  
AKE File # 11-557X

- Available alternative designs that would prevent the incident in which Mr. Matos was injured.

- Existing modifications to the platform and retractable boom that would make it safer.

- Internal documents produced by defendants.

- Literature as it relates to the issues of interest.

4) Mr. Cannon's qualifications will include but not be limited to the following:

- His curriculum vitae (included as Attachment I).

- Mr. Cannon's publications and writings – both publically available and internally generated as a military contractor that relate to this issues of interest in this matter.

- Mr. Cannon's similar real world experience as it relates to the system under evaluation.

- Specific background, experience and technical publications related to the subject product that is above and beyond Mr. Cannon's academic degree.

5) Mr. Cannon's Rule 26 list of deposition and trial testimony in the past 4 years (included as Attachment II)

6) A statement of billing for Mr. Cannon's services to date and AKE Inc.'s fee schedule (included as Attachment III)

7) Mr. Cannon's opinions as set forth herein are stated to a reasonable degree of engineering probability.

Mark R. Cannon, P.E.  
Consulting Engineer

exp. 6/30/2014

Attachment I – Curriculum Vitae  
Attachment II – Testimony History  
Attachment III – Billing for services to date and fee schedule